UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**DANNY RIDLING**                                                                                        **PETITIONER**

VS.                         Case No. 5:05cv00300 BD

**LARRY NORRIS, Director**
**Arkansas Department of Correction**                                           **RESPONDENT**

# ORDER

I.   Background:

Petitioner Danny J. Ridling was convicted of rape after a jury trial in the Circuit Court of Pulaski County, Arkansas, based on his having engaged in sexual intercourse with a child under the age of fourteen. Petitioner admitted to having had sex with the girl, but contended that she was fourteen at the time they first had sex.[1] The Supreme Court of Arkansas affirmed the conviction on appeal. *Ridling v. State*, 348 Ark. 213, 72 S.W.3d 466 (2002).

After his conviction was affirmed on direct appeal, Petitioner filed a petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure ("Rule 37 Petition"). The trial court denied the Rule 37 Petition without a hearing, and Petitioner

---

[1] It was stipulated at trial that Petitioner is the father of the girl's baby boy who was born while the girl was fourteen years old. There was evidence adduced at trial that the child was conceived shortly after the girl's fourteenth birthday.

appealed to the Supreme Court of Arkansas. In that appeal, Petitioner claimed, among other alleged errors,[2] that his lawyer provided ineffective assistance at trial. First, he contended that his lawyer was ineffective for advising him not to accept a plea offer; second, he assigned error to his lawyer's "disparaging" comments about him in closing argument; third, he faulted his lawyer for failing to object to two jurors who slept during the trial; and fourth, he contended that his lawyer should have called witnesses to testify that he did not live around the public park where the underage victim testified that she first met Petitioner until after the victim was fourteen years old. The Arkansas Supreme Court affirmed the trial court's denial of the Rule 37 Petition in an unpublished opinion.

In this habeas corpus action, Petitioner claims that he was denied his Sixth Amendment right to effective trial counsel because his lawyer: (1) failed to advise him adequately of the risks involved with opting not to accept a plea offer; (2) failed to call "alibi" witnesses; (3) made disparaging remarks about Petitioner in closing argument; and (4) failed to object to sleeping jurors. Each of these grounds was raised in Petitioner's Rule 37 Petition to the state trial court and again in his appeal of the denial of the Rule 37 Petition to the Supreme Court of Arkansas.

---

[2] Petitioner raised other claims in his appeal of the denial of post-conviction relief, but those issues are not raised in this habeas corpus petition and need not be discussed.

II.     Standard of Review:

A.      Limited Federal Review of Claims Adjudicated in State Court:

"When a claim has been adjudicated on the merits in state court, habeas relief is warranted only if the state court proceeding resulted in (1) a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Bucklew v. Luebbers*, 436 F.3d 1010, 1015 (8th cir. 2006) (quoting 28 U.S.C. § 2254(d)(1) and (2)); see also *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462 (2005).

A state court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000).

A decision is "an unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Siers v. Weber,* 259 F.3d 969, 973 (8th Cir. 2001) (citing *Williams, supra*). See also, *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (holding that where a state court's application of federal law is challenged, that application "must be shown to be not only erroneous but objectively unreasonable.") "In other words, it is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (citation omitted).

In addition, in a federal habeas proceeding, a state court's factual findings are entitled to a presumption of correctness, absent procedural error. Those findings may be set aside "only if they are not fairly supported by the record." *Simmons v. Luebbers*, 299 F.3d 929, 942 (8th Cir. 2002) (quoting *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769 (1995) and *Middleton v. Roper,* 455 F.3d 838, 845 (8th Cir. 2006)).

B.     <u>Limited Federal Review of Claims for Ineffective Assistance of Trial Counsel</u>:

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel at every stage of the proceeding. "That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough,* 540 U.S. at 5 (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Thus, in order to prevail on a habeas corpus claim of ineffective assistance of counsel, a petitioner must show: (1) that trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability the outcome of the trial would have been different but for the substandard performance of trial counsel. See *Strickland,* 466 U.S. at 687-94. Furthermore, "[j]udicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689); see also *Middleton,* 455 F.3d at 845. Stated another way, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*, 540 U.S. at 8. Petitioner's current habeas corpus Petition must be analyzed against this legal backdrop.

III.     Analysis of Petitioner's Claims:

A.     Failure to Advise Claim:

For his first Constitutional error, Petitioner claims that his lawyer's performance was constitutionally deficient because the lawyer failed to advise Petitioner that, if convicted of rape, he would not be eligible for parole until he had served seventy-percent

of his sentence.  This argument fails for two reasons: first, because of the state courts' factual findings that Petitioner was fully apprised of the consequences of his failure to accept the plea offer; and second, because the Arkansas Supreme Court's opinion denying relief on this point is neither "contrary to" federal law as set out by the United States Supreme Court, nor is its opinion "objectively unreasonable."

The record establishes that Petitioner was initially charged with carnal abuse in the third degree[3] based on the victim's first report that she was fourteen at the time she engaged in sexual intercourse with Petitioner, who was somewhere between the ages of 44 and 50, at the time.[4]  The statute of limitations apparently had run on the crime of carnal abuse in the third degree when Petitioner was charged with that crime, and Petitioner filed a motion to dismiss on that ground.  The prosecutor then learned from the victim that she was actually under the age of fourteen at the time of her first sexual encounter with Petitioner.  Having sexual intercourse with a child under the age of fourteen constitutes rape under applicable Arkansas law, and there was apparently no statute of limitations problem in charging Petitioner with the crime of rape.

---

[3] Carnal Abuse in the Third Degree, Ark. Code. Ann. § 5-14-106, repealed in 2001, by Act 1738, was in effect at the time Petitioner was initially charged.  This crime included sexual intercourse with a minor under the age of sixteen.

[4] There was testimony from the victim that the Petitioner was age fifty when she was age eleven.  The prosecutor, however, made various references at trial to Petitioner's age at the time of the first sexual encounter as both 44 and 47 years old.  Petitioner's exact age at the time of the first sexual encounter is not material for purposes of this Petition.

The parties agree that the state prosecutor offered Petitioner the option of pleading guilty to carnal abuse in the third degree (the crime on which the statute of limitations had run) or going to trial on a charge of rape. Petitioner refused to plead guilty to carnal abuse, and the prosecutor filed an information charging him with rape.

Petitioner claims that his lawyer failed to inform him that, in the event of a rape conviction, he would not be eligible for parole until he had served seventy-percent of his sentence. He now contends that he would have pleaded guilty to carnal abuse had he been informed by his lawyer that a rape conviction is a "seventy-percent parole eligibility" offense. He also claims that his lawyer "assured" him that he would be acquitted of the charge of rape, or that, at the worst, the jury would convict him of the lesser-included charge of carnal abuse in the third degree.

The United States Supreme Court declined to decide whether erroneous advice as to parole eligibility may be deemed constitutionally ineffective assistance of counsel in a case arising in Arkansas, *Hill v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 371 (1985). Based on the lack of Supreme Court precedent, the Court of Appeals for the Eighth Circuit recently has ruled that a state court opinion holding that failure to provide a criminal defendant with information about Arkansas's seventy-percent parole rule does not constitute ineffective assistance of counsel. *Buchheit v. Norris*, 459 F.3d 849 (8th Cir. 2006). The Court of Appeals reasoned that, because the United States Supreme Court specifically declined to rule on the issue, there is no "clearly established" federal

law on the question, and that it, therefore, could "hardly conclude that the Arkansas courts unreasonably determined that [the petitioner's] representation was constitutionally effective." *Buchheit*, 459 F.3d at 852. Like Petitioner in this case, the petitioner in *Buchheit* complained that his lawyer failed to inform him of Arkansas's seventy-percent parole rule for his crime. In *Buchheit*, just as in the instant case, the petitioner "did not request information about parole from his attorney, and he was not given incorrect factual information." *Id.* Although the *Buchheit* case involved a petitioner who did choose to plead guilty, the issue regarding disclosure of Arkansas's seventy-percent rule cannot be distinguished from Petitioner's claim in this case. Thus, there is no basis for habeas relief based on counsel's failure to inform Petitioner that, if convicted of rape, he would be subject to Arkansas's seventy-percent parole eligibility rule.

In addition, the Arkansas Supreme Court's opinion denying Rule 37 relief notes that the trial court denied relief on this point because the plea offer was "fully explained" by his counsel, the deputy prosecuting attorney, and his future defense attorney. There is nothing in the record to rebut this factual finding that Petitioner was fully informed as to the consequences of electing to go to trial on the rape charge. This finding is entitled to a presumption of correctness, and there is no basis for habeas corpus relief on this ground.

B.  Failure to Call "Alibi" Witnesses Claim:

Petitioner next claims that his lawyer's performance was constitutionally defective for failing to call certain "alibi" witnesses, including Johnny Baugh who would have

testified that he helped Petitioner move to a house in the victim's neighborhood "years later" than the victim testified that she first had sexual intercourse with Petitioner. (Petition for Habeas Corpus, p. 5)  Petitioner also refers to "[o]ther witnesses" who would have testified, "that petitioner could have not had sex with [the victim] prior to her fourteenth birthday."[5] (Petition for Habeas Corpus, p. 5)  Petitioner does not identify who the "other witnesses" are.  In the appeal of his Rule 37 Petition, however, he identifies his employer's record-keeper as a potential witness who would have testified that Petitioner worked until 5:00 p.m. each day and, therefore, could not have had sex with the victim in the afternoons after school and before her mother arrived home at 4:30 p.m., as she testified.

"Standing alone, the fact that defense counsel failed to investigate a witness does not by itself satisfy the prejudice prong of *Strickland." Siers,* 259 F.3d at 974.  "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996)(quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994)).  Factors to be considered include: "(1) the credibility of all witnesses, including the likely impeachment

---

[5]Strictly speaking, neither Mr. Baugh nor any other witness would have been "alibi" witnesses.  Neither of the identified would-be witnesses could have testified that Petitioner did not have sex with the victim before she was fourteen.  The most these witnesses could have done would have been to cast further doubt on the victim's credibility.

of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996).

In this case, the Arkansas Supreme Court's opinion correctly notes that, "there was undisputed proof that appellant had sexual intercourse with the victim around the time of her fourteenth birthday and fathered her child.  Neither of these witnesses [the friend who helped Petitioner move and the employer's record-keeper] could have contradicted those facts and changed the outcome of the trial." *Ridling v. State*, Ark. S. Ct. No. CR 03-428, at 5 (Oct. 7, 2004).

The undisputed evidence at trial established that the victim became pregnant with Petitioner's child within a short time after her fourteenth birthday, at the latest.  The victim's fourteenth birthday was in June of 1996; Petitioner's child was born in March of 1997, almost exactly nine months later.  Any testimony by the record-keeper regarding Petitioner's usual quitting time would have been of no value to Petitioner since he obviously managed to meet with the victim at some point on or about her fourteenth birthday, even under the defense theory of the case.  Nor would Mr. Baugh's testimony have blunted the undeniable fact that Petitioner and the victim engaged in sexual intercourse immediately after the victim's fourteenth birthday, at the latest, given the birth of the victim's child nine months later.

Furthermore, there was evidence that Petitioner gave the victim a music box he had painted as a gift for her fourteenth birthday. The jury could have inferred fairly that Petitioner had an ongoing relationship with the victim prior to the time he gave her the music box.

In sum, there was uncontradicted evidence of sexual intercourse around the time of the victim's fourteenth birthday. Testimony from these witnesses would not have helped to pinpoint the exact date of the first sexual contact. Furthermore, there was ample evidence from which a reasonable jury could infer that Petitioner began having sex with the victim at some point before her fourteenth birthday. The state courts' conclusion that testimony from the uncalled witnesses would have made no difference in the outcome of the trial is imminently reasonable.

C.     Counsel's Disparaging Remarks During Closing Argument:

The right to effective assistance extends to closing arguments. See *Bell v. Cone, 535 U.S. 685, 701-702, 122 S.Ct. 1843 (2002)*; *Herring v. New York, 422 U.S. 853, 865, 95 S.Ct. 2550 (1975)*. However, "[j]udicial review of a defense attorney's summation is . . . highly deferential– and doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 4 (2003)*. "[D]eference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Herring, 422 U.S. at 862*.

In this case, defense counsel made the following remarks toward the end of his closing argument:

> Ladies and Gentlemen, the evidence is not there. We talked about the prosecution's burden. We talked about being honest. We talked about even if we didn't like something that he did – maybe he's morally despicable. Maybe you can't stand him. I'm not particularly proud of what he did. Maybe he shouldn't have done it. Maybe he should be morally punished. But there is a difference between moral and legal guilt. We all said that and we all agreed to that. And every one of you took an oath and promised and told me in voir dire that you would follow the law. If they didn't prove it to you from that [witness] stand beyond a reasonable doubt that Mr. Ridling was guilty of this, of having sex before she was fourteen, that you would give an honest judgment of not guilty. And that's what I'm asking you to do now, is go back, look at what was proven through Miss Madden, look at the jury instructions and give the verdict you can give, which is not guilty.

Respondent's Exhibit "G." This argument is within the bounds of what a reasonably competent lawyer would argue to a jury, for strategic reasons. The jury had heard undisputed testimony that Petitioner, who was in his mid-forties, first approached the victim at a park as she watched her older brother playing basketball. The defense attorney reasonably might have calculated that an Arkansas jury would find Petitioner's conduct so repugnant that they would be tempted to find him guilty, *even if the victim had been fourteen at the time*. Counsel chose to address the issue head-on and implore the jury to distinguish between conduct that is "morally despicable" and conduct that would constitute "legal guilt." The argument was a reasonable attempt to deal with irrefutable "bad facts." As a matter of law, the argument did not fall below an objectively reasonable standard of conduct for competent lawyers.

D.      Failure to Object to Sleeping Jurors:

Petitioner contends that it "appeared" that there were two sleeping jurors during his criminal trial. (Habeas Petition, p. 6) This issue also was raised in Petitioner's Rule 37 Petition, and in the appeal of the trial's court's denial of that Petition.

The only factual support offered in his appeal to the Supreme Court of Arkansas on this point was that, "[t]wo jurors appeared to sleep during testimony and defense counsel did not object." Respondent's Exhibit "D," p. 8. The Arkansas Supreme Court affirmed denial of relief on this claim because Petitioner, as with the petitioner in *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002), made "no showing in his motion, supporting affidavits, or trial testimony regarding counsel's knowledge of the alleged sleeping jurors." Likewise in the habeas petition currently before this court, there is not even an allegation, much less a showing, that counsel for Petitioner knew of sleeping jurors.[6]

There is no merit to Petitioner's claim of ineffective assistance of counsel on this point. The Supreme Court of Arkansas reasonably concluded that there was no basis for defense counsel to make an objection, and no basis to find that counsel had any knowledge of sleeping jurors.

---

[6] Petitioner does not state when the alleged nodding-off occurred. Assuming jurors were sleeping–and assuming that defense counsel was aware of it, an assumption wholly unsupported in the record by even an allegation–defense counsel might reasonably have decided, for strategic reasons, not wake a sleeping juror during the prosecutor's presentation of the State's case against Petitioner.

IV.     Conclusion:

Petitioner has no sustainable grounds for habeas corpus relief.  Accordingly, this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #1) is DISMISSED in its entirety, with prejudice.

IT IS SO ORDERED this 21st day of February, 2007.

_____
U. S. MAGISTRATE JUDGE